# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| **TRAVIS BRUNET,** §<br>**Individually and on behalf** §<br>**of all others similarly situated,** § <br> § <br> ***Plaintiff,*** § <br> § <br>**v.** § <br> § <br>**GB PREMIUM OCTG SERVICES LLC** § <br> § <br> ***Defendant.*** § <br> § | **Civil Action No. _____** <br><br> **JURY TRIAL DEMANDED** <br><br><br> **COLLECTIVE ACTION** <br> **PURSUANT TO 29 U.S.C. § 216(b)** <br><br> **CLASS ACTION** <br> **PURSUANT TO FED. R. CIV. P. 23** |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Travis Brunet brings this action individually and on behalf of all current and former Thread Representatives (hereinafter "Plaintiff and the Putative Class Members") who worked for GB Premium OCTG Services LLC ("GB") and were paid a straight hourly wage but no overtime from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New Mexico Minimum Wage Act ("NMMWA"), §§ 50-4-19 *et seq.*

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. §216(b), while his NMMWA claims are asserted as a class action under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1.      This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover overtime wages, and a Federal Rule of Civil Procedure 23(b) (3) class action pursuant to the state law of New Mexico to recover unpaid wages, overtime wages, and other applicable penalties.

2.      Plaintiff and the Putative Class Members are those current and former Thread Representatives who worked for GB, anywhere in the United States, at any time from April 1, 2018 through the final disposition of this matter, and were paid a straight hourly wage for all hours worked, but did not receive overtime for all hours worked over forty (40) in each workweek.

3.      GB misclassified Plaintiff and the Putative Class Members as independent contractors.

4.      Although Plaintiff and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5.      The decision by GB not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

6.      GB knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7.      Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or the NMMWA.

8.      Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime and other damages owed under the NMMWA as a class action pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiff prays that all similarly situated Thread Representatives (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.      Plaintiff also prays that the Rule 23/New Mexico Class is certified as defined herein, and Plaintiff be designated as the Class Representative.

## II.
## THE PARTIES

11.      Plaintiff Travis Brunet worked for GB within the relevant time period. Plaintiff Brunet did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.      The Putative Class Members include those current and former Thread Representatives who worked for GB, anywhere in the United States, at any time since April 1, 2018, and have been subjected to the same illegal pay system under which Plaintiff Brunet worked and was paid.

13.      The New Mexico Class members include those current and former Thread Representatives who worked for GB, in the state of New Mexico, at any time from April 1, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Brunet worked and was paid.

14.      GB Premium OCTG Services LLC ("GB") is a foreign limited liability company doing business in the State of New Mexico and may be served through its registered agent for service, **C T Corporation, 2929 Allen Parkway, Suite 300, Houston, Texas 77024.**

---

[1] The written consent of Travis Brunet is hereby attached as Exhibit A.

## III.
## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

16.     This Court has supplemental jurisdiction over the additional New Mexico state law claims under 29 U.S.C. § 1367.

17.     This Court has general personal jurisdiction over GB because GB's significant contacts with, and business operations in, New Mexico are systematic and continuous such that it is essentially at home in New Mexico.

18.     This Court has specific personal jurisdiction over GB because the cause of action arose within this District as a direct result of GB's conduct within this District.

19.     Venue is proper in the District of New Mexico because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

20.     Specifically, GB has maintained a working presence throughout New Mexico (and the United States), and Plaintiff Brunet worked in and around Jal, New Mexico throughout his employment with GB, all of which are located in this District and Division.

21.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

22.     GB has been providing oilfield tubular connection services to a wide range of domestic and international clients since 1986.[2]

---

[2] https://gbpremserv.com/about-us/.

23.     As part of its oilfield tubular connection services, GB employed numerous Thread Representatives to provide inspection and testing of threaded pipe, connectors, and torque measurements in New Mexico and throughout the United States and the Gulf of Mexico.

24.     GB paid its Thread Representatives a straight hourly wage for all hours worked but no overtime—including Plaintiff Brunet and the individuals that make up the putative or potential class.

25.     While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield.

26.     Plaintiff Brunet worked exclusively for GB as a Thread Representative in New Mexico, Texas, California, Colorado, Alaska, North Dakota, Mississippi, Louisiana and the Gulf of Mexico from approximately April 2014 through March 2021.

27.     Based on the schedules set by GB, Plaintiff and the Putative Class Members worked over forty (40) hours nearly every (if not every) workweek they performed services for GB.

28.     Although it is well-known that blue-collar oilfield workers like Plaintiff and the Putative Class Members are not exempt from overtime, GB did not pay Plaintiff and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

29.     Plaintiff and the Putative Class Members' primary job duties included inspection and testing of threaded pipe, connectors, and torque measurements in the oilfield and offshore in the Gulf of Mexico.

30.     Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by GB and/or their clients.

31.     Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by GB.

32.     Virtually every job function was pre-determined by GB, including the tools to use at a job site, Plaintiff and the Putative Class Members' schedule of work, and related work duties.

33.     Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

34.     Moreover, Plaintiff and the Putative Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

35.     Plaintiff and the Putative Class Members are blue-collar workers.

36.     They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfields of the United States and offshore in the Gulf of Mexico.

37.     GB determined the hours Plaintiff and the Putative Class Members worked.

38.     GB set Plaintiff and the Putative Class Members' pay and controlled the number of hours they worked on a weekly basis.

39.     GB set all employment-related policies applicable to Plaintiff and the Putative Class Members.

40.     GB maintained control over pricing and marketing.

41.     GB also chose equipment and product suppliers.

42.     GB owned or controlled the equipment and supplies that Plaintiff and the Putative Class Members used to perform their work.

43.     GB had the power to hire and fire Plaintiff and the Putative Class Members.

44.     GB made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members a straight hourly wage for all hours worked with no overtime pay.

45.     GB reimbursed Plaintiff and the Putative Class Members for expenses.

46.     Specifically, GB provided Plaintiff and the Putative Class Members with company credit cards and paid and/or reimbursed Plaintiff and the Putative Class Members for travel, lodging and food.

47.     GB also paid and/or reimbursed Plaintiff and the Putative Class Members for their personal protective equipment ("PPE") – that is, fire/flame retardant clothing, hardhats, safety goggles, etc.

48.     GB provided tools and equipment that Plaintiff and the Putative Class Members used.

49.     Plaintiff and the Putative Class Members did not employ their own workers.

50.     Plaintiff and the Putative Class Members worked continuously for GB on a permanent full-time basis.

51.     GB, instead of Plaintiff and the Putative Class Members, made the large capital investments in leases, buildings, equipment, tools, and supplies.

52.     Plaintiff and the Putative Class Members relied exclusively on GB for their work.

53.     Plaintiff and the Putative Class Members did not market any business or services of their own.

54.     Instead, Plaintiff and the Putative Class Members worked the hours assigned by GB, performed duties assigned by GB, worked on projects assigned by GB, and worked for the benefit of GB and its customers.

55.     GB paid Plaintiff and the Putative Class Members on a bi-weekly basis.

56.     Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

57.     Rather, Plaintiff and the Putative Class Members' only earning opportunity was based on the number of hours they were allowed to work, which was controlled by GB and its customers.

58.     GB improperly classified Plaintiff and the Putative Class Members as independent contractors.

59.     The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves.

60.     Instead, they were economically dependent upon GB for their work.

61.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

62.     GB denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

63.     Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

64.     GB applied this pay practice despite clear and controlling law that states that Plaintiff and the Putative Class Members were GB's ***non-exempt*** employees, and not independent contractors.

65.     Accordingly, GB's pay policies and practices blatantly violated (and continue to violate) the FLSA and the NMMWA.

### V.
### CAUSES OF ACTION

### COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.     FLSA COVERAGE**

66.     All previous paragraphs are incorporated as though fully set forth herein.

67.     The FLSA Collective is defined as:

**ALL THREAD REPRESENTATIVES WHO WORKED FOR GB PREMIUM OCTG SERVICES LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM APRIL 1, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

68.     At all times hereinafter mentioned, GB has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

69.     At all times hereinafter mentioned, GB has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

70.     At all times hereinafter mentioned, GB has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

71.     During the respective periods of Plaintiff and the FLSA Collective Members' employment by GB, these individuals provided services for GB that involved interstate commerce for purposes of the FLSA.

72.     In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

73.     Specifically, Plaintiff and the FLSA Collective Members are (or were) ***non-exempt*** employees who worked for GB and were engaged in oilfield services that were directly essential to the production of goods for GB and related oil and gas exploration and production companies. 29 U.S.C. § 203(j).

74.     At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

75.     In violating the FLSA, GB acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

76.     The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 67.

77.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of GB.

## B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

78.     All previous paragraphs are incorporated as though fully set forth herein.

79.     GB violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

80.     Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of GB's acts or omissions as described herein; though GB is in possession and control of necessary documents and information from which Plaintiff and the FLSA Collective Members would be able to precisely calculate damages.

81.     Moreover, GB knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

82.     GB knew or should have known its pay practices were in violation of the FLSA.

83.     GB is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

84.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted GB to pay overtime in accordance with the law.

85.     The decision and practice by GB to not pay overtime was neither reasonable nor in good faith.

86.     Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     FLSA COLLECTIVE ACTION ALLEGATIONS

87.     All previous paragraphs are incorporated as though fully set forth herein.

88.     Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

89.     Other similarly situated employees have been victimized by GB's patterns, practices, and policies, which are in willful violation of the FLSA.

90.     The FLSA Collective Members are defined in Paragraph 67.

91.     GB's failure to pay any overtime compensation results from generally applicable policies and practices and does not depend on the personal circumstances of the individual FLSA Collective Members.

92.     Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

93.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

94.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

95.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

96.     Indeed, the FLSA Collective Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

97.     GB has employed a substantial number of similarly situated Thread Representatives across the United States since April 1, 2018.

98.     Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States.

99.     Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

100.    Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and GB will retain the proceeds of its rampant violations.

101.    Moreover, individual litigation would be unduly burdensome to the judicial system.

102.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

103.    Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 67 and notice should be promptly sent.

## COUNT TWO
**(Class Action Alleging Violations of the NMMWA)**

### A.     NMMWA COVERAGE

104.    All previous paragraphs are incorporated as though fully set forth herein.

105.    The New Mexico Class is defined as:

**ALL THREAD REPRESENTATIVES WHO WORKED FOR GB PREMIUM OCTG SERVICES LLC, IN THE STATE OF NEW MEXICO, AT ANY TIME FROM APRIL 1, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("New Mexico Class" or "New Mexico Class Members").**

106.    At all times hereinafter mentioned, GB has been an employer within the meaning of the NMMWA.

107.    At all times hereinafter mentioned, Plaintiff and the New Mexico Class Members have been employees within the meaning of the NMMWA.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE NMMWA**

108.    All previous paragraphs are incorporated as though fully set forth herein.

109.    The NMMWA requires that employees receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

110.    Plaintiff and the New Mexico Class Members have not been exempt from receiving overtime benefits under the NMMWA.

111.    Plaintiff and the New Mexico Class Members regularly worked more than forty (40) hours in workweeks during times relevant to this complaint, however, GB violated the NMMWA by failing to pay Plaintiff and the New Mexico Class Members any overtime premium for hours worked over forty (40) per week.

112.    Plaintiff and the New Mexico Class Members have suffered damages and continue to suffer damages as a result of GB's acts or omissions as described herein; though GB is in possession and control of necessary documents and information from which Plaintiff and the NMMWA Class Members would be able to precisely calculate damages.

113.    In violating the NMMWA, GB acted willfully, without a good faith basis and with reckless disregard of clearly applicable New Mexico law.

114.     The proposed class of employees, i.e. putative class members sought to be certified pursuant to the NMMWA, is defined in Paragraph 105.

115.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of GB.

## C.     NMMWA CLASS ALLEGATIONS

116.     Plaintiff brings his NMMWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by GB to work in New Mexico since April 1, 2018.

117.     Class action treatment of Plaintiff's NMMWA claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

118.     The number of New Mexico Class Members is so numerous that joinder of all class members is impracticable.

119.     Plaintiff's claims share common issues of law and fact with the claims of the New Mexico Class.

120.     Plaintiff is a member of the New Mexico Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of the New Mexico Class Members.

121.     Plaintiff and his counsel will fairly and adequately represent the class members and their interests.

122.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

123.     Accordingly, the New Mexico Class should be certified as in Paragraph 105.

## VI.
## RELIEF SOUGHT

124.    Plaintiff respectfully prays for judgment against GB as follows:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 67 and requiring GB to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.    For an order certifying the NMMWA Class as defined in Paragraph 105, and designating Plaintiff Brunet as Representative of the NMMWA Class;

c.    For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d.    For an Order pursuant to Section 16(b) of the FLSA finding GB liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

e.    For an Order awarding the costs and expenses of this action;

f.    For an Order awarding attorneys' fees;

g.    For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h.    For an Order awarding Plaintiff Brunet a service award as permitted by law;

i.    For an Order compelling the accounting of the books and records of GB, at GB's own expense;

j.      For an Order providing for injunctive relief prohibiting GB from engaging in future violations of the FLSA and the NMMWA, and requiring GB to comply with such laws going forward; and

k.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   April 1, 2021                          Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:   /s/ Clif Alexander
      **Clif Alexander**
      State Bar No. 24064805
      clif@a2xlaw.com
      **Austin W. Anderson**
      State Bar No. 24045189
      austin@a2xlaw.com
      **Lauren E. Braddy**
      State Bar No. 24071993
      lauren@a2xlaw.com
      819 N. Upper Broadway
      Corpus Christi, Texas 78401
      Telephone: (361) 452-1279
      Facsimile: (361) 452-1284

      ***Attorneys in Charge for Plaintiff and the Putative Class Members***